LAGOA, Judge.
 

 United Automobile Insurance Co. (“United”) petitions for second-tier certio-rari review of the circuit court appellate division’s per curiam affirmance of a final summary judgment entered in favor of the respondent, Professional Medical Group, Inc. (“PMG”). Because we find no departure from the essential requirements of the law, we deny the petition.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 On August 15, 2004, Gaston Botta, a United insured, sustained injuries in an automobile accident.
 
 [1]
 
 As a result of those injuries, Botta received medical treatment from PMG beginning on August 19, 2004 and concluding on November 17, 2004. Botta assigned his personal injury protection benefits to PMG, and PMG then sought payment for the treatment from United. United received three sets of bills from PMG: the first on October 18, 2004; the second on November 9, 2004; and the third on December 1, 2004. On December 14, 2004, PMG sent a demand letter to United along with a resubmission of the bills, which included the physician’s license number in Box 31 of the CMS-1500 forms.
 
 *23
 
 United, however, denied PMG’s claim for benefits.
 

 On November 6, 2006, PMG filed its complaint seeking unpaid benefits. As affirmative defenses, United claimed that payment was not required because PMG did not provide United with proper written notice of a covered loss where: (1) the initial set of bills did not include a disclosure and acknowledgment form (“D and A form”), as described in section 627.736(5)(e), Florida Statutes (2004); and (2) Box 31 of the CMS-1500 claim form did not contain the physician’s license number, as required by section 627.736(5)(d), Florida Statutes (2004).
 

 Subsequently, PMG filed a motion for summary judgment on both of United’s affirmative defenses — failure to include the physician’s license number and failure to provide the D and A form with the initial set of bills. The trial court granted summary judgment in favor of PMG, finding that PMG had substantially complied with the statute. While a discrepancy existed below regarding this issue, United concedes that on October 10, 2006 it did in fact receive the D and A form, along with a second demand letter.
 

 Regarding the physician’s missing license number, PMG explained to the trial court that the demand letter received by United on December 14, 2004, also included a CMS-1500 form which contained the physician’s license number. In granting summary judgment in favor of PMG, the trial court found that PMG had adequately corrected the initial error of failure to provide the license number, and that United knew who the physician was.
 

 The trial court subsequently entered final judgment in PMG’s favor, and the circuit court appellate division entered a per curiam affirmance. This appeal ensued.
 

 II.
 
 STANDARD OF REVIEW
 

 The issuance of a writ of certio-rari “is limited to those instances where the lower court did not afford procedural due process or departed from the essential requirements of the law.”
 
 Allstale Ins. Co. v. Kaklamanos,
 
 843 So.2d 885, 889 (Fla.2003). A departure from the essential requirements of the law that is sufficient to justify the issuance of a writ requires a violation of a clearly established principle of law resulting in a miscarriage of justice.
 
 Id.
 
 Accordingly, “review on second-level certiorari is extremely limited.”
 
 Williams v. Miami-Dade County,
 
 969 So.2d 389, 392 (Fla. 3d DCA 2007).
 

 III.
 
 ANALYSIS
 

 On appeal, United first claims
 
 [2]
 
 that the physician’s failure to provide his or her license number on a claim form fails to provide United with “written notice of the fact of a covered loss” as required by section 627.736(4)(b), Fla. Stat. (2004), and that this omission cannot be cured prior to litigation.
 

 Second, United argues that in order for it to have received notice of a covered loss, the initial and timely set of bills must include the D and A form as described in section 627.736(5)(e), and that this omission cannot be cured prior to litigation. We find both arguments to be without merit.
 

 Pursuant to section 627.736(4)(b), personal injury protection benefits are over
 
 *24
 
 due “if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss.” As such, the triggering event for determining when a payment is overdue is the insurer’s receipt of written notice of a covered loss. Section 627.736(5) (d) sets forth the requirements for providing notice of a loss:
 

 All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to the insurer on a properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 forms, or any other standard form approved by the office or adopted by the commission for purposes of this paragraph.... All providers other than hospitals shall include on the applicable claim form the professional license number of the provider in the line or space provided for “Signature of Physician or Supplier, Including Degrees or Credentials.” ... For purposes of paragraph (4)(b), an insurer shall not be considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph, and unless the statements or bills are
 
 properly completed
 
 in their entirety as to all
 
 material
 
 provisions, with all
 
 relevant
 
 information being provided therein.
 

 (emphasis added). “Properly completed,” in turn, is defined in section 627.732(13), Florida Statutes (2004):
 

 “Properly completed” means providing truthful,
 
 substantially complete,
 
 and
 
 substantially accurate
 
 responses as to all
 
 material elements
 
 to each applicable request for information or statement by a means that may lawfully be provided and that complies with this section, or as agreed by the parties.
 

 (emphasis added). Additionally, section 627.736(5)(b)l.d., Florida Statutes (2004), states that an insurer is not required to pay a claim or charges “[w]ith respect to a bill or statement that does not substantially meet the applicable requirements of paragraph (d).” Accordingly, based upon the statute’s plain language, a bill or statement need only be “substantially complete” and “substantially accurate” as to relevant information and material provisions in order to provide notice to an insurer.
 

 In this case, the initial set of bills that PMG furnished to United contained the name of the physician in the appropriate box on the form. Moreover, numerous other forms and medical records provided to United contained the physician’s name as well. United did not claim below that it did not know who the physician was, or that the person named on the form was not in fact a licensed physician. Indeed, after receiving the bills, United proceeded to process the matter by sending the insured, Botta, to examinations and a peer review. At no time did United object to the missing physician license number. Given these facts, United cannot claim it was harmed or prejudiced by the missing number. As such, we find that the initial set of bills PMG provided to United were “substantially complete” as to all relevant and material information as required by section 627.736(5)(d).
 

 Additionally, even if the physician’s license number were deemed a material provision of the statements or bills, nothing in the statute’s plain language indicates that the absence of the license number cannot be cured by later submission of the number to the insurer on a claim form as described in section 627.736(5)(d). It is undisputed that PMG provided United the license number on another claim form that was mailed to United with a demand letter prior to litigation. Accordingly, any error or omission, if it existed, was sufficiently
 
 *25
 
 cured by PMG prior to the initiation of litigation.
 

 With respect to the issue of the D and A form, the same reasoning also applies. Sections 627.736(5)(e)l, and (5)(e)5 state:
 

 1. At the initial treatment or service provided, each physician ... providing medical services upon which a claim for personal injury protection benefits is based shall require an insured person, or his or her guardian, to execute a disclosure and acknowledgment form....
 

 5. The original completed disclosure and acknowledgment form shall be furnished to the insurer pursuant to paragraph (4)(b) and may not be electronically furnished.
 

 United claims that the section 627.736(5)(e)5’s reference to paragraph (4)(b) means that a failure to provide a D and A form with the initial, timely set of bills results in a failure to place the insurer on notice of a covered loss. Even assuming United’s interpretation of the statute’s reference to paragraph (4)(b) were correct, we find that PMG cured any defect in submitting the D and A form prior to litigation. As previously noted, United now concedes, contrary to what it claimed below, that it received the form on October 10, 2006. There is nothing in the language of this statute that supports United’s conclusion that a failure to provide a D and A form with the initial, timely set of bills cannot be cured.
 

 Accordingly, we conclude that the circuit court appellate division applied the correct law, and did not depart from the essential requirements of the law. We, therefore, deny the petition for writ of certiorari.
 

 Petition denied.
 

 [1]
 

 . The claim was reported to United on August 25, 2004, and United sent Botta for an examination under oath on September 21, 2004. Additionally, United sent Botta for an independent medical examination on October 19, 2004, and also conducted a peer review on June 8, 2005.
 

 [2]
 

 . United also argues that the circuit court departed from the essential requirements of the law in affirming the trial court’s granting of summary judgment in favor of PMG on United's affirmative defense that the bills were not reasonable, related, or necessary. Because we find that the issue was not preserved for appellate review, we do not address this claim.
 
 See Roth v. Cohen,
 
 941 So.2d 496, 500 (Fla. 3d DCA 2006).